FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ JUL 31 2012 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
   YEMELYAN SICHKIN,

                        Plaintiff,

     -against-

   ALAIN LEGER,

                        Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-CV-1067 (NGG) (VVP)**

NICHOLAS G. GARAUFIS, United States District Judge.

     Plaintiff Yemelyan Sichkin brings this pro se action against Defendant Alain Leger, alleging extortion resulting from internet transactions and subsequent electronic communications. Leger has filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5), and failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the court does not have personal jurisdiction over Leger, his Rule 12(b)(2) motion is GRANTED and the case is dismissed.

**I.    BACKGROUND**

     The present dispute arose through the sale of emeralds on the internet auction site Ebay by Plaintiff Sichkin, a resident of Long Island City, New York, to Defendant Leger, a resident of Edmonton, Alberta, Canada. (See Compl. (Docket Entry # 1).) In December 2010, Leger won an Ebay auction for two emeralds sold by Sichkin. (Id. at 1.) Leger submitted online payment in

1

the amount of $1,093.50 (minus a $42.95 transaction fee) on December 19.[1] (Id. at 1, 10.) Soon after, Leger wrote to Sichkin requesting a refund because he had paid with the wrong bank account (id. at 21), and Sichkin submitted a refund that same day (id. at 10). On December 20, Leger again submitted a payment of $1,093.50 for the two emeralds. (Id. at 2, 10.)

Beginning on December 29, 2010, and continuing over the next few days, a series of emails were exchanged between Leger and Sichkin. Leger first wrote that he had not received the initial refund from Sichkin, and then approximately an hour later sent a second message indicating that one of the emeralds was chipped. (Id. at 26-27.) Sichkin replied on January 2, 2011, defending the quality of his products, but offering a refund if Leger was not satisfied. (Id. at 29.) That same day, Leger won a second Ebay auction for two different emeralds sold by Sichkin. (Id. at 3.) After Sichkin sent an invoice for these items, Leger wrote back, requesting that the money he believed he was owed for either the failed refund or the chipped products be applied to this second purchase. (Id. at 30.)

Over the next two weeks, Leger sent a series of messages, requesting replacements for the chipped emeralds and clearing of his account balance. (Id. at 31-37.) On January 15, 2011, Leger posted four negative feedback items on Sichkin's Ebay account, writing in part, "he is a fraud was supposed to send me free because of bad gem send chip broken," and "sme [sic] as above was supposed to send free for reparation on last stones sold bad." (Id. at 55.) On January 17, Sichkin paid Leger $1,204.45, the amount that Leger claimed he was owed. (Id. at 10.) After receiving the payment, Leger wrote again to request replacement emeralds. (Id. at 5.)

On March 4, 2011, Sichkin filed the instant Complaint seeking $137,500 in compensatory damages and an unspecified amount of punitive damages for extortion resulting in

---

[1] All known payments between the parties were made online and all known communications between the parties were made via email. Thus, any payments or communications referenced in the following discussion were made through these media.

2

lost revenue, lost customer base, and injured business reputation. (Id. at 1, 7.) Leger moved for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (5), and (6). (See Def. Mot. to Dismiss (Docket Entry # 11).)

## II. LEGAL STANDARD

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999). If a federal court is presented with questions of both types of jurisdiction, it may choose among these "threshold grounds for denying audience to a case on the merits." Id. at 585.

"A federal district court sitting in diversity may exercise personal jurisdiction to the same extent as a state court of general jurisdiction in the state in which it sits." Golden Archer Investments, LLC v. Skynet Financial Systems, No. 11-CV-3673 (RJS), 2012 WL 123989, at *3 (S.D.N.Y. Jan. 3, 2012); see also Fed. R. Civ. Pro. 4(k)(1)(A). Accordingly, the determination of whether the court has personal jurisdiction over a foreign defendant is a two-part test. "First, [the court] must determine whether there is personal jurisdiction over [the defendant] under New York state law; second, if New York law provides for personal jurisdiction, the court must determine whether the assertion of jurisdiction comports with the constitutional requirements of due process." Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 396 (S.D.N.Y. 2004). If the court does not have personal jurisdiction over the defendant, the action must be dismissed. See Fed. R. Civ. P. 12(b)(2); Laborers Local 17 Health and Ben. Fund v. Phillip Morris, Inc., 26 F. Supp. 2d 593, 597 (S.D.N.Y. 1998).

"The burden of establishing jurisdiction over a defendant, by a preponderance of the evidence, is upon the plaintiff." Hoffritz for Cutlery, Inc. v. Amjac, Ltd., 763 F.2d 55, 57 (2d

3

Cir. 1985). If the court chooses not to hold an evidentiary hearing and instead "to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of personal jurisdiction over defendant . . . ." Cutco Indus. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986). If so, "all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubt exist, they are resolved in the plaintiff's favor." Hoffritz for Cutlery, 763 F.2d at 57. While the court must liberally construe pleadings filed by pro se litigants, Branham v. Meachum, 77 F. 3d 626, 628-29 (2d Cir. 1996), it cannot "assert personal jurisdiction over non-resident defendants where none exists . . . ." Marczeski v. Price, No. 98-CV-1427 (GLG), 1999 WL 66105, at *1 (D. Conn. Feb. 10, 1999).

### A. New York Long-Arm Statute

New York's so-called long-arm statute—composed of Sections 301 and 302 of the New York Civil Procedure Law and Rules ("CPLR")—governs personal jurisdiction over non-domiciliary defendants. See N.Y. C.P.L.R. §§ 301, 302. Of relevance in the present case is CPLR § 302, which allows the court to exercise specific jurisdiction over such a defendant.[2] Under CPLR § 302, the court has personal jurisdiction over a non-domiciliary defendant if the defendant:

> 1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2) commits a tortious act within the state . . . ; or

---

[2] CPLR § 301 permits the court to exercise general jurisdiction over a defendant if the defendant is "engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in the state." Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998) (internal quotation marks and citation omitted). Such business activities must be "continuous, permanent, and substantial." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000).

Nothing in the record suggests that Leger has any offices, employees, bank accounts, or any other property in New York, and he has sworn that he doesn't in a declaration attached to his motion to dismiss. (See Def. Decl. (Docket Entry # 11-1) ¶¶ 4-10.) Leger's only known contacts with the state are the two Ebay purchases from Sichkin and related communications. Such limited contacts fall well short of establishing general jurisdiction through substantial solicitation. See Overseas Media, Inc. v. Skvortsov, 407 F. Supp. 2d 563, 569 (S.D.N.Y. 2006). Thus, Sichkin cannot make a prima facie showing of general jurisdiction over Leger pursuant to CPLR § 301.

4

>　　3) commits a tortious act without the state causing injury to person or
> property within the state, except as to a cause of action for defamation of
> character arising from the act, if he
>　　　　(i) regularly does or solicits business, or engages in any other persistent
> course of conduct, or derives substantial revenue from goods used or consumed or
> services rendered, in the state, or
>　　　　(ii) expects or should reasonably expect the act to have consequences in
> the state and derives substantial revenue from interstate or international
> commerce; or
>　　4) owns, uses, or possesses any real property situated within the state.

N.Y. C.P.L.R. §§ 302(a)(1)-(4).

### B.　Due Process Requirements

If the court finds the defendant's actions meet the requirements of the long-arm statute, it must then inquire into whether the exercise of jurisdiction comports with the Due Process Clause of the Constitution. The due process analysis has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010). The minimum contacts inquiry requires a showing by the plaintiff that "his claim arises out of or relates to defendant's contacts with the forum state, . . . that the defendant purposefully availed himself of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there." Bank Brussels Lambert v. Fidler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002). The reasonableness inquiry requires the court to ensure that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Golden Archer, 2012 WL 123989, at *5 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

### III.　DISCUSSION

Sichkin argues that, because his claim satisfies the requirements for subject matter jurisdiction, he does not need to also satisfy the requirements for personal jurisdiction over

5

Leger.³ (See Pl. Rep. Mem. (Docket Entry # 21) at 2.) He is incorrect. See Ruhrgas, 526 U.S. at 577. However, the court will liberally construe Sichkin's Complaint, as befits the complaint of a pro se litigant, and search the Complaint to determine whether Sichkin has made a prima facie showing of jurisdiction. Because none of the grounds for specific jurisdiction in the New York long-arm statute are met, the court concludes it does not have personal jurisdiction over Leger, and the action must be dismissed.

### A. CPLR §§ 302(a)(2), (a)(3), and (a)(4)

Taking the grounds contained in the long-arm statute somewhat out of order, the court first finds that the requirements of CPLR § 302(a)(2), § 302(a)(3), and § 302 (a)(4) are not met. CPLR § 302(a)(2) requires "the physical presence of the defendant in New York when the tort is committed." Unique Industries, Inc. v. Sui & Sons Intern. Trading Corp., 05-CV-2744 (KMK), 2007 WL 3378256, at *3 (S.D.N.Y. Nov. 9, 2007) (citing Bensusan Rest. Corp. v. King, 126 F.3d 25, 29 (2d Cir. 1997)). Nothing in the record suggests (and Sichkin has not alleged) that Leger was ever physically present in New York in the relevant time period, and Leger stated in a sworn declaration that he had not been in the state since 1979. (Def. Decl. (Docket Entry # 11-1) ¶ 11.) Thus, CPLR § 302(a)(2) cannot give the court jurisdiction.

The court next finds that Sichkin has not made prima facie showings of the requirements of CPLR §§ 302(a)(3)(i) or (ii). CPLR § 302(a)(3)(i) requires that: (1) Leger committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; and (4) Leger regularly does or solicits business in New York, or engages in persistent course of conduct in New York, or derives substantial revenue

---

³ Sichkin writes, "[I]f the court has subject matter jurisdiction, argument that the case must be dismissed because it does not have personal jurisdiction, for unprofessional ear of plaintiff sounds equal to: 'Regardless of what jurisdiction this court may have this case must be dismissed because according to provision of that statute of Marine Law the court lacks jurisdiction in international waters if the defendant has diplomatic immunity.'" (Pl. Rep. Mem. (Docket Entry # 21) at 2.)

from goods used or services rendered in New York. CPLR § 302(a)(3)(i). Because, at a minimum, the fourth condition is not satisfied, § 302(a)(3)(i) is not a valid basis for jurisdiction. As described above, Leger's only known New York business transactions were the two emerald purchases from Sichkin. See note 2, supra. Additionally, it is uncontested that Leger works as a woodwork installer in the Edmonton area and derives his income and revenue solely from the operation of this business. (See Def. Decl. ¶ 2-3.) There is no evidence that Leger regularly does business or any other persistent course of conduct in New York, and also no evidence that he derives any—let alone a substantial—amount of revenue from New York goods or services. Thus, CPLR § 302(a)(3)(i) does not give the court jurisdiction. For the same reason, CPLR § (a)(3)(ii) also does not grant the court jurisdiction because there is no evidence that Leger derives any (and certainly not substantial) revenue from interstate or international commerce.

Finally, the requirements of CPLR § 302(a)(4) are not satisfied because nothing in the record indicates that Leger owns any real property in New York, and he stated in his declaration that he does not own any real property in the state (which Sichkin does not contest). (Def. Decl. ¶ 10.)

### B. CPLR § 302(a)(1)

Thus, Sichkin's only possible ground for jurisdiction would be CPLR § 302 (a)(1). The court finds no plausible basis to assert jurisdiction under this subsection.

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Sole Resort, 450 F.3d at 103. A defendant "transacts business" only when he "purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." Cutco Indus., Inc. v.

Naughton, 806 F.2d 361, 365 (2d Cir. 1986) (internal citation omitted) (emphasis added). While a single transaction of business can be sufficient to give rise to jurisdiction under this subsection, it is "the quality of the defendants' New York contacts that is the primary consideration." Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (2007). So, for example, "merely telephoning a single order to New York requesting a shipment of goods to another state . . . do[es] not support CPLR 302(a)(1) jurisdiction." Id. (internal citations omitted).

Here, it is unclear if Leger was even aware that he was buying products from a seller domiciled in New York and, if he did become aware before litigation, at what point. The only reference to New York in the parties' submissions is in an email dated January 8, 2011—after both emerald purchases had already been made—in which Sichkin explains delays in shipping from "NYC." (See Compl. at 33.) Prior to that date, there is no evidence or allegation that Leger knew from which state he was making his purchases. Accordingly, the record does not demonstrate that Leger purposefully availed himself of the privilege of conducting activities in New York.

Even if Leger was aware that Sichkin was domiciled in New York, the nature of their interaction also leads the court to conclude it does not have jurisdiction. Both Leger and Sichkin were unsophisticated parties who engaged in minimal communications for transactions of relatively small amounts of money. See Deutsche Bank Sec., Inc. v. Montana Bd. Of Invs., 7 N.Y.3d 65, 71-72 (2006) (finding that the court has long-arm jurisdiction over a sophisticated out-of-state financial institutions that engaged in telephone negotiations over thirteen months and culminated in a $15 million transaction, and contrasting instant case to a prior case where it upheld an Appellate Division decision finding no long-arm jurisdiction over an unsophisticated out-of state individual who placed an order with a New York stockbroker by telephone and sent

8

one letter about that transaction to a New York office). Leger's two Ebay purchases, made over a short period of time and initially without any direct contact with Sichkin, and Leger's brief email exchange, analogous to a few phone calls or letters addressed to New York recipients, were of insufficient quality for the court to exercise long-arm jurisdiction. See id.; Granat v. Bochner, 702 N.Y.S.2d 262, 263 (App. Div. 1st Dep't 2000) ("[S]ending faxes and making phone calls to this State are not, without more, activities tantamount to 'transacting business' within the meaning of the [New York] long-arm statute."). See also Machulsky v. Hall, 210 F. Supp. 2d 531, 541-42 (D.N.J. 2002) (ruling that out-of-state defendant's single Ebay purchase does not satisfy "purposeful availment of doing business" and minimal correspondence via email with seller following Ebay purchase "by itself or even in conjunction with [defendant's] single purchase, does not constitute sufficient minimum contacts."). Thus, CPLR § 302(a)(1) does not bestow this court with jurisdiction over Leger.

The evidence in the record fails to establish a prima facie showing of personal jurisdiction over Leger under the New York long-arm statute. Accordingly, the court does not reach the due process inquiry of the jurisdictional analysis or his other grounds for dismissal.

## IV. CONCLUSION

For the foregoing reasons, Leger's motion to dismiss for lack of personal jurisdiction is GRANTED. All other pending motions are denied as moot. The clerk of court is directed to close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
July 30, 2012

NICHOLAS G. GARAUFIS
United States District Judge

9